IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CYNTHIA MARIA WILSON                          09-CV-1419-BR
STE CLAIRE,

        Plaintiff,                     OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.


ALAN R. UNKELES
Alan R. Unkeles, PC
1865 N.W. 169th Place, Suite 121
Beaverton, OR 97006
(503) 531-5370


1  -  OPINION AND ORDER

**LINDA S. ZISKIN**
Ziskin Law Office
PO Box 2237
Lake Oswego, OR 97035
(503) 889-0472

          Attorneys for Plaintiff

**DWIGHT C. HOLTON**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**STEPHANIE R. MARTZ**
**GERALD J. HILL**
**L. JAMALA EDWARDS**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2272

          Attorneys for Defendant

**BROWN, Judge.**

     Plaintiff Cynthia Maria Wilson Ste Claire seeks judicial
review of a final decision of the Commissioner of the Social
Security Administration (SSA) in which he denied Plaintiff's
protective application for Disability Insurance Benefits (DIB)
under Title II of the Social Security Act.  This Court has
jurisdiction to review the Commissioner's decision pursuant to 42
U.S.C. § 405(g).

2  -  OPINION AND ORDER

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB on December 13, 2005. Tr. 55.[1] Her application was denied initially and on reconsideration. Tr. 55-56. An Administrative Law Judge (ALJ) held a hearing on November 17, 2008. Tr. 22-54. At the hearing, Plaintiff, lay-witness Tina Marie Sedlack, a medical expert (ME), and a vocational expert (VE) testified. Tr. 22-54. Plaintiff was represented by an attorney. Tr. 24.

On January 16, 2010, the ALJ issued an opinion in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 11-21. On October 6, 2009, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. Tr. 1-4.

## BACKGROUND

Plaintiff was 47 years old at the time of the hearing before the ALJ. Tr. 44. She completed her education through the

---

[1] Citations to the official transcript of record filed by the Commissioner on January 27, 2010, are referred to as "Tr."

3 - OPINION AND ORDER

twelfth grade.   Tr. 25.   Plaintiff has performed past work as an administrative assistant, collection clerk, technical-support specialist, data-entry specialist, receptionist, and order clerk. Tr. 44, 120-26.   Plaintiff alleges a disability onset date of July 18, 2005.   Tr. 85.

Plaintiff has been diagnosed with, *inter alia*, fibromyalgia, chronic back pain, chronic migraines, hyperacusis, depression, insomnia, Temporomandibular Joint Disorder (TMJ), and obesity. Tr. 230, 237, 241, 245-46, 253-56, 269-71.   She also has a history of ovarian cancer.   Tr. 210.   Plaintiff alleges disability due to neck and back pain with radiating pain in her legs, migraine headaches exacerbated by hyperacusis, double vision, fibromyalgia, and TMJ.   Tr. 27-30, 68, 114.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.   After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.   *See* Tr. 20-22.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.   *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).   To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility and for resolving conflicts and ambiguities in the medical evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the

Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).

## **DISABILITY ANALYSIS**

### I.   **The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially
dispositive.

In Step One, the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*,
454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R.
§ 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout*, 454 F.3d
at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  *Stout*, 454
F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iii).  The

criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date of July 8, 2005.  Tr. 13.

At Step Two, the ALJ found Plaintiff has the severe impairments of "disorder of the back," depression, fibromyalgia, migraine headaches, and double vision.  Tr. 13.  The ALJ found Plaintiff's hyperacusis, TMJ, bruxism, and sleep apnea are not severe impairments.  Tr. 14.

At Step Three, the ALJ found Plaintiff has "the residual functional capacity to perform a limited range of light work."

Tr. 16.   Specifically, the ALJ found Plaintiff has the RFC to

> walk up to two blocks at one time on a level
> surface.  She can stand for 30 minutes at a
> time throughout an 8 hour workday.  She can
> sit 1 hour at a time throughout an 8 hour
> workday.  She can frequently lift ten pounds
> and occasionally lift 20 pounds but neither
> can be lifted repetitively.  She has a
> push/pull limitation.  She has moderate
> impairment of vision and ability to maintain
> focus.  Her hearing is functional.  Her short
> term memory is functional.  She has a
> moderate impairment in her ability to
> maintain concentration.  She has functional
> use of both hands.  She can drive for short
> distances in the day time.  Due to her
> depression, she has fatigue and functions at
> 90 percent of the energy level generally
> expected of a person her age.

Tr. 16.

At Step Four, the ALJ concluded Plaintiff cannot perform any

of her past relevant work.  Tr. 19.

At Step Five, the ALJ concluded Plaintiff can perform jobs

that exist in significant numbers in the national economy,

including worm packer, cotton tier, and stuffer. Tr. 20.

Accordingly, the ALJ found Plaintiff is not disabled and,

therefore, is not entitled to benefits.  Tr. 20-21.


## DISCUSSION

Plaintiff contends the ALJ erred by (1) finding at Step Two

that Plaintiff's hyperacusis is not a severe impairment; (2)

failing at Step Two and Three to consider Plaintiff's impairment

of obesity; (3) failing to provide legally sufficient reasons for

9  -  OPINION AND ORDER

discrediting the opinions of Plaintiff's treating physician Colin Robert Cave, M.D., and consulting physician Robert J. Grimm, M.D.; (4) failing to provide legally sufficient reasons for discrediting Plaintiff's testimony; (5) relying on VE testimony that was based on an improper hypothetical; and (6) concluding at Step Five that Plaintiff can perform jobs that exist in significant numbers in the national economy.

**I.   Severity of Plaintiff's Hyperacusis.**

Plaintiff contends the ALJ erred at Step Two when he found Plaintiff's hyperacusis is not severe.   In his Response, the Commissioner essentially concedes the ALJ erred by finding Plaintiff's hyperacusis is not severe and argues only that such error is harmless.

A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  *See also Ukolov*, 420 F.3d at 1003. The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(a), (b).  Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine

work setting.  *Id.*

The Step Two threshold is low:

> [A]n impairment can be considered as not
> severe only if it is a slight abnormality
> which has such a minimal effect on the
> individual that it would not be expected to
> interfere with the individual's ability to
> work . . . .  [T]he severity regulation is to
> do no more than allow the Secretary to deny
> benefits summarily to those applicants with
> impairments of a minimal nature which could
> never prevent a person from working.

SSR 85-28 at *2 (Nov. 30, 1984)(internal quotations omitted).

The Ninth Circuit describes Step Two as a "*de minimus* screening

device to dispose of groundless claims." *Smolen*, 80 F.3d at

1290. *See also Webb v. Barnhart*, 433 F.3d 683, 686-88 (9th Cir.

2005).  "Great care should be exercised in applying the not

severe impairment concept."  SSR 85-28 at *4.

Plaintiff contends her hyperacusis is severe because it has

more than a minimal effect on her ability to work.  In fact,

Dr. Cave's assessment of Plaintiff's hyperacusis includes his

finding that Plaintiff suffers from "pain and discomfort

associated with loud and/or unexpected noises," which renders

Plaintiff unable to work in noisy settings.  Tr. 293.  Dr. Cave

also stated hyperacusis "can be quite disabling in people who

suffer from the disorder."  Tr. 294.  As a result, Dr. Cave

concluded Plaintiff cannot work in environments with loud or

irritating noises, which includes "the avoidance of phone-related

duties at work, and a work area away from loud noised machinery

11 -  OPINION AND ORDER

or crowds of people."  Tr. 294.

        In reaching his conclusion that Plaintiff's hyperacusis is
not severe, the ALJ stated hyperacusis "is reported to have no
objective testing and no clear treatment."  Although Dr. Cave
diagnosed Plaintiff with hyperacusis on two separate occasions,
each of his opinions include the fact that hyperacusis is not
determined by objective testing.  Tr. 294, 309.  Thus, the ALJ's
statement to that effect does not undermine Dr. Cave's diagnosis
of hyperacusis or his description of its disabling effects. The
ALJ also pointed out that "an audiogram performed on the claimant
showed normal tympanograms and essentially normal hearing with
small conductive loss  of hearing at the very high frequencies."
Tr. 14.  At the hearing before the ALJ, however, the ME testified
Plaintiff's normal audiogram does not disprove that she suffers
from hyperacusis, but merely demonstrates she does not have any
hearing loss, which only rules out vestibular dysfunction.  Tr.
42-43.  The ME also noted Plaintiff's "otolaryngologist described
[hyperacusis] carefully as a very debilitating illness."  Tr. 42.
Thus, the ALJ's reference to Plaintiff's "normal" audiogram does
not undermine the diagnosis or severity of Plaintiff's
hyperacusis.  Significantly, the ALJ did not point to any medical
evidence in the record to support his conclusion that Plaintiff's
hyperacusis is not severe.  Despite his finding, the ALJ
concluded Plaintiff has a "hypersensitivity to sound and it is

difficult for her to be on the telephone." Tr. 16.  The ALJ also
noted Dr. Cave's recommendation that Plaintiff "should be in work
environments without loud or irritating noises."  Tr. 19.
Nevertheless, the ALJ did not include these limitations in his
assessment of Plaintiff's RFC or in his hypothetical to the VE at
the hearing.  Tr. 16, 44-50.

The record reflects hyperacusis could prevent a person such
as Plaintiff from working.  Tr. 42, 294, 310.  *See* SSR 85-28 at
*2.  The ALJ's bases for finding Plaintiff's hyperacusis not
severe at Step Two, therefore, are not supported by the record.
Accordingly, the Court concludes on this record that the ALJ
erred when he found Plaintiff's hyperacusis is not severe.

**II.  Consideration of Plaintiff's Obesity.**

Plaintiff also contends the ALJ erred when he failed to
consider Plaintiff's obesity at Steps Two and Three and its
potential effect on Plaintiff's other impairments.  Again,
although the Commissioner essentially concedes in his Response
that the ALJ did not consider Plaintiff's obesity, the
Commissioner maintains "Plaintiff is unable to demonstrate
reversible error."

Social Security Regulations provide:

> Effects of obesity.  Obesity is a medically
> determinable impairment that is often
> associated with disturbance of the
> musculoskeletal system, and disturbance of
> this system can be a major cause of
> disability in individuals with obesity.  The

13 -  OPINION AND ORDER

combined effects of obesity with musculo-
skeletal impairments can be greater than the
effects of each of the impairments considered
separately.  Therefore, when determining
whether an individual with obesity has a
listing-level impairment or combination of
impairments, and when assessing a claim at
other steps of the sequential evaluation
process, including when assessing an
individual's residual functional capacity,
adjudicators must consider any additional and
cumulative effects of obesity.

20 C.F.R. pt. 404, subpt. P, app'x 1, listing 1.00(Q).  *See also*

SSR 02-1p *4-5 ("[I]n the absence of evidence to the contrary in

the case record, we will accept a diagnosis of obesity given by a

treating source or by a consultative examiner. . . .  [W]e will

do an individualized assessment of the impact of obesity on an

individual's functioning when deciding whether the impairment is

severe.).

      As noted, Plaintiff contends and the record reflects the ALJ

did not consider Plaintiff's obesity.  The record reflects

Plaintiff is morbidly obese and weighs as much as 336 pounds.

Tr. 254-55, 257, 269-70, 310.  Moreover, Disability Determination

Services (DDS) physicians[2] Martin Kehrli, M.D., and Neal E.

Berner, M.D., noted diagnoses of Plaintiff as obese.  Tr. 219,

228.  The record also reflects Plaintiff suffers from

musculoskeletal impairments such as neck and back impairments and

---

      [2] Disability Determination Services (DDS) is a federally
funded state agency that makes eligibility determinations on
behalf and under the supervision of the Social Security
Administration pursuant to 42 U.S.C. § 421(a).

fatigue that could be exacerbated by Plaintiff's weight.

Defendant contends on the basis of *Burch v. Barnhart* that the ALJ's failure to consider Plaintiff's obesity did not prejudice Plaintiff and should be considered harmless error because Plaintiff has not established any functional limitations stemming from her obesity.  400 F.3d 676, 682.  *Burch*, however, is plainly distinguishable.  In *Burch* the ALJ discussed the record with respect to the plaintiff's obesity diagnosis at Step Three and noted the impact of her obesity on her back impairment at his Step Five determination.  *Id.* at 681-84.  On that basis, the Ninth Circuit concluded the ALJ's failure to discuss the plaintiff's obesity at Step Two was harmless error because the ALJ gave the plaintiff's obesity appropriate consideration and the ALJ accounted for the plaintiff's weight in his evaluation of her RFC.  *Id.*

Here the ALJ did not mention Plaintiff's obesity at all, and the Court cannot determine from this record whether the ALJ complied with the requirement to consider Plaintiff's obesity and its potential effect on Plaintiff's other impairments.  The Court, therefore, concludes the ALJ erred when he failed to consider at Step Two whether Plaintiff's obesity, in combination with Plaintiff's other impairments, has any effect on Plaintiff's functional capacity.

III. Opinions of Drs. Cave and Grimm.

Plaintiff contends the ALJ did not give legally sufficient reasons for discrediting the opinions of Drs. Cave and Grimm.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007)(quoting *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)).  When the medical opinion of a treating or examining physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Lester*, 81 F.3d at 830-32.

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Id.*  A nonexamining physician is one who neither examines nor treats the claimant.  *Id.* at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g., Morgan v. Comm'r of Soc. Sec.*

*Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

### A.    Dr. Cave's Opinion.

Dr. Cave, an otolaryngologist, examined Plaintiff on September 7, 2006, and on March 21, 2007, on referral by her treating Nurse Practitioner, Ken Lease.  Tr. 293-94, 308-10.  As noted, Dr. Cave assessed Plaintiff's complaints of pain, discomfort, and migraines associated with noise in her workplace. Tr. 293, 309.  Despite a normal audiogram, Dr. Cave diagnosed Plaintiff with hyperacusis, which he described as "quite disabling for many people."  Dr. Cave stated Plaintiff should avoid work environments with loud or irritating noises such as crowds of people or machinery and should not engage in work on the telephone.  Tr. 294, 309-10.

### 1.    ALJ's Decision.

The ALJ gave "some weight" to Dr. Cave's opinion without specifying the particular aspects that he accepted or rejected.  Tr. 18.  The ALJ also summarized Dr. Cave's opinion as to Plaintiff's functional limitations, but, significantly, he did not point to any evidence in the record to contradict Dr. Cave's opinion.  Tr. 19.  The only reasons given by the ALJ for discrediting Dr. Cave's opinion appear to be limited to his finding that hyperacusis is not subject to objective testing and

that Plaintiff had a normal audiogram.  Tr. 18-19.

### 2.  Analysis.

Plaintiff contends the ALJ erroneously rejected
Dr. Cave's opinion as to the limiting effects of Plaintiff's
hyperacusis and, therefore, did not include those limitations in
his evaluation of Plaintiff's RFC.  The ALJ found, for example,
Plaintiff's hearing to be "functional" and did not include any
limitations on Plaintiff's ability to work in noisy environments.
Tr. 16.  Moreover, the ALJ did not include any such limitations
in his hypothetical to the VE.  Tr. 44-50.  The Commissioner,
however, contends any error in the ALJ's consideration of
Dr. Cave's opinion is "immaterial" because the ALJ's conclusions
are supported by other evidence in the record.

As noted, the record does not support the ALJ's
conclusion that a lack of objective measure for hyperacusis or
the existence of a normal audiogram undermines Dr. Cave's
opinion.  In fact, Dr. Cave's opinion includes consideration of
both of these concerns.  Tr. 293-94, 308-10.  Moreover,
Dr. Cave's diagnosis and conclusions as to Plaintiff's functional
limitations are echoed by Dr. Grimm and Nurse Practitioner Lease,
who both ultimately concluded Plaintiff is permanently and
totally disabled by her impairments.  Tr. 229, 328-30.  In
addition, at the hearing before the ALJ, the ME did not
contradict Dr. Cave's assessment of hyperacusis or discount the

severity of its effects.  Tr. 42-43.

        The Commissioner also contends the ALJ's failure to
include Dr. Cave's opinion as to Plaintiff's hyperacusis-related
impairments is harmless error because inclusion of those
limitations would only result in the elimination of the job of
"cotton tier" due to the exposure to loud machinery required by
that occupation.  Plaintiff and the Commissioner agree the
position of "stuffer" involves moderate machinery noise, but they
disagree as to whether Plaintiff could perform that job based on
her hyperacusis-related limitations.  There is not any testimony
by the VE in the record with respect to that issue.

        On this record, the Court concludes the ALJ erred when
he failed to provide legally sufficient reasons supported by
substantial evidence in the record for discrediting the opinion
of Dr. Cave.

    **B.  Dr. Grimm's Opinion.**

    Dr. Grimm, a neurologist, examined Plaintiff and her medical
records as part of a two-day neurological evaluation that he
performed on October 30 and November 12, 2008.  Tr. 328-32.
Dr. Grimm diagnosed Plaintiff with abnormal neurological function
that causes her balance and equilibrium to be completely
dependent on vision; diplopia and double-vision; bilateral inner
ear degeneration including hyperacusis; diminished concentration,
short-term memory, and multitasking ability secondary to inner

19 -  OPINION AND ORDER

ear deficits; chronic depression secondary to her neurologic
deficits; and chronic hip and low-back pain.  Tr. 329-30.
Ultimately Dr. Grimm concluded Plaintiff's neurologic deficits
are permanent and, as a result, that Plaintiff "is permanently
and totally disabled and not able to work or function in the
public work space."  Tr. 330.

### 1.   ALJ's Decision.

After summarizing Dr. Grimm's findings and conclusions,
the ALJ gave "limited weight" to Dr. Grimm's opinion.  Tr. 19.
Although the ALJ found the record supported Dr. Grimm's
assessment of Plaintiff's vision and hearing impairments, the ALJ
concluded Dr. Grimm's opinion that Plaintiff's impairments
prevent her from working is "contradicted by other medical
evidence" and pointed out that the determination of disability is
reserved to the Administrative Law Judge.  Tr. 19.

### 2.   Analysis.

The ALJ did not point to specific evidence in the
record that contradicts Dr. Grimm's opinion.  None of the
physicians' opinions to which the ALJ accorded "significant
weight" are neurologists or performed neurological assessments of
Plaintiff that undermine Dr. Grimm's assessment.  Tr. 18, 253-56,
273-74, 278-80, 289-92, 314.  Furthermore, the Court does not
find any opinion by an examining or treating physician in the
record that contradicts Dr. Grimm's assessment.  In fact, only

20 -  OPINION AND ORDER

the opinions of two nonexamining DDS physicians, Drs. Berner and
Kerhli, who opine Plaintiff is capable of light-exertion work
that includes some of her past relevant work, appear to
contradict Dr. Grimm's ultimate conclusion that Plaintiff is
totally disabled.  Tr. 212-19, 228.  The ALJ, however, found the
opinions of both Drs. Berner and Kerhli to be "inconsistent with
the treatment record" and gave them limited weight.  Tr. 19.  In
any event, the opinions of Drs. Berner and Kerhli cannot alone
constitute "substantial evidence" to contradict Dr. Grimm's
opinion because they are nonexamining physicians.  *See Lester*, 81
F.3d at 830-32.  Thus, the Court finds the ALJ erred when he
discredited Dr. Grimm's assessment on the ground that it is
"contradicted by other medical evidence."  Tr. 19.

In summary, the Court finds the ALJ has not identified any
medical evidence in the record that contradicts the opinions of
examining physicians Drs. Cave or Grimm or is a basis for
discrediting their opinions as to Plaintiff's impairments and
functional limitations.  In fact, there is substantial medical
evidence in the record that supports the opinions of Drs. Cave
and Grimm.

The Court, therefore, concludes the ALJ erred when he
discredited the opinions of Drs. Cave and Grimm without providing
legally sufficient reasons supported by substantial evidence in
the record for doing so.

21 -  OPINION AND ORDER

## IV.  Plaintiff's Credibility.

Plaintiff also contends the ALJ erred by failing to provide legally sufficient reasons based on substantial evidence in the record for finding Plaintiff's statements "concerning the intensity, persistence and limiting effects" of her symptoms not credible.  Tr. 17.

In *Cotton v. Bowen,* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester*, 81 F.3d at 834)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must specifically identify "what testimony is not credible and what evidence undermines the

claimant's complaints." *Parra*, 481 F.3d at 750 (quoting *Lester*, 81 F.3d at 834).   According to the Social Security Admini-stration:

> The reasons for the credibility finding must
> be grounded in the evidence and articulated
> in the determination or decision.  It is not
> sufficient to make a conclusory statement
> that "the individual's allegations have been
> considered" or that "the allegations are (or
> are not) credible."  It is also not enough
> for the adjudicator simply to recite the
> factors that are described in the regulations
> for evaluating symptoms.  The determination
> or decision must contain specific reasons for
> the finding on credibility, supported by the
> evidence in the case record, and must be
> sufficiently specific to make clear to the
> individual and to any subsequent reviewers
> the weight the adjudicator gave to the
> individual's statements and the reasons for
> that weight.  This documentation is necessary
> in order to give the individual a full and
> fair review of his or her claim, and in order
> to ensure a well-reasoned determination or
> decision.

SSR 96-7p at *4.

Here Plaintiff testified at the hearing that she is unable to work because of the pain, irritation, and migraine headaches that certain noises cause; her double-vision, which makes it difficult for her to focus on a task; the pain in her back and legs, which makes it difficult for her to sit or to stand for more than a short duration; and her difficulties with short-term memory and her inability to concentrate.  Tr. 27-36.  Plaintiff testified over a five-day week that she would be limited to no

23 -  OPINION AND ORDER

more than an hour-and-a-half of sitting in a chair that did not allow her to recline, to standing for no more than ten minutes at a time for a total of six or seven times in a day, and to lifting no more than ten pounds frequently.  Tr. 35-37.  Plaintiff attested she performs minimal household activities to care for her mother, but much of the laundry, cleaning, and other household chores are performed by a person who helps to care for her mother.  Tr. 37-38.

The ALJ found even though Plaintiff's "medically determinable impairment could reasonably be expected to produce the alleged symptoms . . .[, her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  Tr. 12-13.  The ALJ concluded Plaintiff's testimony was not credible because the "objective medical evidence reflects that the claimant's functional limitations considered individually and in combination, are not as significant and limiting as has been alleged by the claimant."  Tr. 17.  Because the ALJ did not identify any "affirmative evidence of malingering" in the record, he can reject Plaintiff's subjective symptom testimony only if he provides clear and convincing reasons for doing so.  *Parra,* 481

F.3d at 750.[3]

    The Court finds the ALJ's general statement that Plaintiff's
testimony was not credible "to the extent [her statements were]
inconsistent with the . . . residual functional capacity
assessment" is neither a clear nor convincing reason to support
the ALJ's conclusion.  The ALJ does not provide any specific
bases for his conclusion; *i.e.*, the ALJ does not identify
particular statements by Plaintiff that he found not credible or
point to specific evidence in the record that contradicts
Plaintiff's stated limitations.  Tr. 17.  Moreover, other than
the opinions of the DDS physicians, which the ALJ already
discredited as inconsistent with the medical record, the medical
record does not appear to undermine Plaintiff's subjective
symptom testimony.  Tr. 19.

    The Court, therefore, concludes the ALJ erred when he did
not provide legally sufficient reasons supported by substantial
evidence in the record for discrediting Plaintiff's subjective

_____

    [3] The Commissioner contends the "clear and convincing"
standard that has been the Ninth Circuit's standard since at
least its decision in *Lester* in 1995 for rejecting claimant
testimony in the absence of evidence of malingering is improper.
The Commissioner contends the "judicially-crafted clear and
convincing standard must yield to Defendant's reasonable
interpretation of the Act that only specific reasons are
required."  The Court declines the Commissioner's request that
this Court invalidate or ignore long-standing Ninth Circuit
precedent on the basis of the Commissioner's four-sentence
argument.  In any event, because the ALJ did not provide any
specific bases for rejecting Plaintiff's testimony, the ALJ
committed reversible error under either standard.

25 -  OPINION AND ORDER

symptom testimony.

**V.    Alleged Errors at Step Five.**

Although Plaintiff also contends the ALJ's hypothetical to the VE was erroneous and that the ALJ erred at Step Five when he concluded Plaintiff could perform jobs that exist in significant numbers in the national economy, the Court need not address these arguments because the Court has determined, as set out below, that this matter should be remanded for further proceedings.

<u>**REMAND**</u>

Having found the ALJ erred when he (1) failed to find Plaintiff's hyperacusis to be severe at Step Two; (2) failed to consider Plaintiff's obesity diagnosis; (3) discredited the opinions of Drs. Cave and Grimm without providing legally sufficient reasons for doing so, and (4) discredited Plaintiff's subjective symptom testimony without providing any basis supported by substantial evidence in the record for doing so, the Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would

26 - OPINION AND ORDER

serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.*  The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2.

On this record, the Court concludes further proceedings are required to (1) determine the effect of Plaintiff's hyperacusis-related limitations on her ability to perform the jobs of worm packer and stuffer,[4] (2) consider and determine the effects of Plaintiff's obesity on her other impairments and her RFC, (3) give appropriate weight to and further consider the opinions of Plaintiff's examining physicians Drs. Cave and Grimm, (4) evaluate Plaintiff's RFC based on the preceding consider-

---

[4] As noted, the Commissioner concedes Plaintiff cannot perform the cotton tier job if Plaintiff's hyperacusis-related limitations are considered because the job entails loud machinery noises.

ations, and (5) determine whether Plaintiff can perform jobs that exist and constitute a significant number in the national economy.

### CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 4th day of November, 2010.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District